The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for the reversal of an evidentiary ruling by the Deputy Commissioner.
 *************
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. A Pre-Trial order dated December 30, 1996 was received into evidence.
2. An index of employment and medical records marked as stipulated exhibit 1 was received into evidence.
3. A set of medical records marked as stipulated exhibit 2 was received into evidence.
The OSHA report about which Plaintiff testified but which was not properly identified is not allowed into evidence.
 *************
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. In 1988, plaintiff began employment as a sleeve setter for the defendant-employer. From 1988 through July of 1993 plaintiff put sleeves on T-shirts. Plaintiff's regular job duties required her to sit at a table while she performed her job duties setting the sleeves. While plaintiff was sitting, she would stretch forward across the left side of the table and lift a ten pound bundle of T-shirts. Plaintiff would perform this stretching motion about fourteen or fifteen times during an eight hour shift.
2. On December 4, 1992, plaintiff was performing her regular job duties as a sleeve setter operator when she began experiencing pain in her left hip area. Plaintiff suspected that her pain was related to a urinary problem so she left her work station in order to go to the bathroom. After relieving herself, plaintiff returned to her work station and attempted to perform her regular job duties. The pain continued to persist so plaintiff reported to her supervisor that she was experiencing this pain. Plaintiff was not allowed to leave work in order to obtain medical treatment for this pain because she did not have any personal leave time. Plaintiff went to the cafeteria and remained there in pain until her shift was over. Plaintiff then went to the emergency room at the Hamlet Hospital where she was examined for pain in the left flank of her lower back. The emergency room physician was unable to determine the etiology of plaintiff's lower back pain and referred plaintiff to Dr. McQueen. Plaintiff was restricted from returning to work until she could be examined by Dr. McQueen.
3. On December 10, 1992, plaintiff began a course of treatment for her low back pain under the direction of Dr. McQueen. Dr. McQueen suspected that plaintiff was experiencing spasms and a strain of the lumbar muscles, but he did direct her to receive diagnostic testing in order to rule out any kidney problems. A December 14, 1992 ultrasound study revealed no abnormalities with regard to the plaintiff's kidneys. Dr. McQueen restricted plaintiff from returning to work until December 22, 1992.
4. On February 12, 1993, plaintiff began a course of physical therapy for her back condition. Dr. McQueen restricted plaintiff from returning to work for the time period from February 9, 1993 to March 11, 1993. On March 11, 1993, Dr. McQueen released plaintiff to return to work on the following day. Dr. McQueen requested that the defendant-employer adjust the machine pedals at plaintiff's workstation to be closer to the plaintiff.
5. On June 18, 1993, plaintiff was examined by Dr. Ferre pursuant to a referral from Dr. McQueen. Dr. Ferre suspected that plaintiff had sustained a stretch in the sacroiliac joint area of a ligament in her lower back. Dr. Ferre restricted plaintiff from performing any job duties that required sitting and stretching. Dr. Ferre released plaintiff to perform job duties that would allow the plaintiff to stand up.
6. As a result of plaintiff's job duties that required plaintiff to have to reach across a table and lift a ten pound bundle of T-shirts while sitting down as well as having to repeat this motion at least fourteen to fifteen times during a workshift, plaintiff sustained a stretching injury to a ligament located over the sacroiliac joint of her lower back. This injury to plaintiff's ligament in her lower back gradually appeared over time and was not the result of a specific traumatic incident or accident.
7. On July 12, 1993, plaintiff resigned from her job because of her low back problems. Plaintiff was unable to perform her regular sit down job because of the injury that she sustained to her ligament over the sacroiliac joint area. The defendant-employer did not have a job within the restrictions set forth by Dr. Ferre.
8. Plaintiff's supervisor, David Sovde, gave the plaintiff a poor rating on her evaluation at the time of her resignation. Plaintiff was unaware that Mr. Sovde had given plaintiff a poor evaluation at the time of her resignation. Mr. Sovde reported that plaintiff's back problems were not work-related on the resignation form signed by plaintiff. He testified that plaintiff had told him that her back injury was not work related. The deputy commissioner observed both Mr. Sovde and the plaintiff with regard to their testimony about the conversation that took place when plaintiff resigned found Mr. Sovde not to be credible with regard to his claim that plaintiff reported her injury as not work-related as well as his testimony that plaintiff's poor evaluation did not include a consideration of attendance problems resulting from her back injury. Plaintiff did not report to Mr. Sovde that her back problems were not work-related. Plaintiff's poor evaluation was a result of attendance problems caused in part by plaintiff's lower back injury. The Full Commission defers to the judgment of the Deputy Commissioner and agrees with the Deputy Commissioner's findings.
8. Plaintiff drew unemployment compensation for at least twenty-six weeks for the time period following July 12, 1993.
9. Plaintiff has filed applications with prospective employers as required by the Employment Security Commission. The defendant-employer did not provide a positive reference about plaintiff's work performance to any of these prospective employers. Plaintiff had been unable to locate any work at the time of the hearing before the Deputy Commissioner.
10. As a result of the injury to plaintiff's ligament over the sacroiliac joint, plaintiff was unable to earn any wages for the time period beginning from December 5, 1992 to December 22, 1992 and from February 9, 1993 to March 12, 1993 and from July 12, 1993 to the present, and continuing.
11. Dr. Ferre's expert medical opinion is that plaintiff's job duties that required her to stretch to obtain bundles while sitting placed plaintiff at an increased risk in sustaining an injury to the sacroiliac joint as compared to the general public not so equally exposed. This opinion appears to be based upon the belief that plaintiff performed this task 819 times during an eight hour shift. The OSHA report reviewed by Dr. Ferre does not distinguish between the repetitive motions involving the use of her hands and the repetitive motion involving the use of her back. Plaintiff only performed the stretching motion with her back about fourteen to fifteen times during a workshift. It is not clear that Dr. Ferre would still be of the opinion that plaintiff's job activities placed her at an increased risk of injuring a ligament over the sacroiliac joint if he had considered that plaintiff only had to reach fourteen to fifteen times to pick up a ten pound bundle during her workshift.
 *************
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. Plaintiff has no occupational disease, and no disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with the defendant-employer. N.C. Gen. Stat. § 97-53(13); N.C. Gen. Stat. § 97-53(21)
 *************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim is HEREBY DENIED.
2. Each side shall pay its own costs.
3. Defendants shall pay an expert witness fee in the amount of $140.00 to Dr. McQueen.
This the ___ day of August 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER